Matt Adams
Leila Kang
Aaron Korthuis
Margot Adams
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

Yvonne Chin
Antoinette M. Davis
ACLU of WASHINGTON FOUNDATION
PO Box 2728
Seattle, WA 98111
(206) 624-2184

Hardeep Rekhi
Greg Wolk
REKHI & WOLK, P.S.
529 Warren Ave N Ste 201
Seattle, WA 98109
(206) 388-5887

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CARLOS RIOS,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>PIERCE COUNTY; "R. ALLEN," and JOHN AND JANE DOES, in their individual and official capacities as deputies of the Pierce County Sheriff's Department,<br><br>　　　　　Defendants. | Case No. 3:22-cv-5021<br><br>**COMPLAINT** |

COMPLAINT – 1
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**INTRODUCTION**

1. This lawsuit arises from Pierce County's unlawful seizure of Plaintiff Carlos Rios, a citizen of the United States and resident of Washington State. On November 19, 2019, Defendants re-detained Mr. Rios after he became entitled to release from Pierce County Jail. Defendants did so for the sole purpose of allowing federal immigration officials to arrive and take custody of him. Defendants' actions demonstrate Pierce County's custom of holding individuals based on detainer requests or administrative warrants issued by immigration officials and providing information regarding such individuals' release to immigration officials, in violation of federal and state law.

2. Defendants violated the Fourth Amendment when, pursuant to Pierce County's custom, they prevented his release and re-shackled Mr. Rios without probable cause of a crime or judicial warrant, and without any lawful authority to enforce federal immigration law. In doing so, Defendants also committed the tort of false arrest against Mr. Rios and violated his civil rights under the Washington Law Against Discrimination. Lastly, in re-detaining Mr. Rios and alerting immigration officials of his impending release, Defendants violated provisions of RCW 10.93.160, enacted as part of the Keep Washington Working Act. The state legislature enacted the Keep Washington Working Act precisely to prevent this type of misconduct—local law enforcement authorities making unfounded assumptions about an individual's immigration status, and using state and local resources to "assist" federal immigration officers in violation of that individual's civil and constitutional rights.

3. Mr. Rios brings this suit under 42 U.S.C. § 1983, RCW 4.96.20, and the Washington Law Against Discrimination, RCW 49.60 *et seq.*, to seek damages for the

COMPLAINT – 2
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

substantial harms he suffered because of Defendants' unlawful actions. He further seeks an order from this Court declaring that Defendants' actions violate the Keep Washington Working Act.

**JURISDICTION AND VENUE**

4. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the laws of Washington State. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and § 1367 (supplemental).

5. Venue is proper pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Mr. Rios's claims occurred in the Western District of Washington.

6. Declaratory relief is authorized under 28 U.S.C. §§ 2201, 2202, Federal Rule of Civil Procedure 57, and the Washington Uniform Declaratory Judgment Act, RCW 7.24.010.

**EXHAUSTION OF STATE TORT CLAIM**

7. Pursuant to RCW 4.96.920, Mr. Rios presented an administrative tort claim for damages to the Pierce County Department of Risk Management on November 8, 2021. More than sixty days have elapsed since Mr. Rios filed the claim. Accordingly, Mr. Rios has satisfied all procedural, notice, and exhaustion requirements for purposes of his state tort claims against Defendant Pierce County.

**PARTIES**

8. Plaintiff Carlos Rios is a resident of the city of Everett in Snohomish County, Washington.

9. At all times relevant to this action, Mr. Rios was a "citizen of the United States" for purposes of 42 U.S.C. § 1983.

10. At all times relevant to this action, Mr. Rios was a "person" for purposes of the Fourth Amendment to the United States Constitution.

COMPLAINT – 3
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

11. Defendant Pierce County is a municipal corporation in the state of Washington. One division within Defendant Pierce County is the Pierce County Sheriff, which employs correctional officers to, among other things, detain and jail individuals suspected or convicted of violating local and state law. The Pierce County Sheriff is also responsible for establishing policies for the training and supervision of its employees.

12. At all times relevant to this action, Defendant Pierce County was acting under color of state or local law.

13. Defendant R. Allen, at all times relevant to this action, was employed as a deputy at the Corrections Bureau of the Pierce County Sheriff's Department and was the officer in charge of Mr. Rios's release.

14. Defendants John and Jane Does, at all times relevant to this action, were employed as deputies at the Corrections Bureau of the Pierce County Sheriff's Department.

15. At all times relevant to this action, Defendant Pierce County employed R. Allen, and John and Jane Does ("Defendant Deputies") as deputies of the Pierce County Sheriff's Department and authorized them to act as its agents.

## FACTUAL ALLEGATIONS

16. Mr. Rios has been a naturalized citizen of the United States since April 2000.

17. On the night of November 17, 2019, Mr. Rios was riding his motorcycle on the highway when he was stopped by the Washington State Patrol in Pierce County, Washington. He was subsequently arrested for allegedly driving under the influence.

18. The arresting officers confiscated Mr. Rios's belongings, including his U.S. passport which he carried with him, and impounded his motorcycle. One of the State Patrol officers transported Mr. Rios to Pierce County Jail in Tacoma, Washington.

COMPLAINT – 4
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

19. In the early hours of November 18, 2019, Mr. Rios was booked into Pierce County Jail.

20. During the booking process, Mr. Rios indicated he was a U.S. citizen. The booking officers at Pierce County Jail saw his U.S. passport while taking an inventory of his belongings.

21. Later that day, on November 18, 2019, U.S. Immigration and Customs Enforcement (ICE) issued Form I-247A, Immigration Detainer and notification request, and Form I-200, Warrant for Arrest of Alien, for Mr. Rios and faxed both documents to Pierce County Jail.

22. After receiving these documents, Pierce County Jail placed an "immigration hold" on Mr. Rios, as indicated by his Inmate Transport Form and booking records. The Inmate Transport Form listed Mr. Rios's ethnicity as "HISPANIC."

23. Upon information and belief, on November 19, 2019, a Pierce County Jail officer informed Mr. Rios that his charges had been dropped, and that he was not required to attend court and would be released.

24. Later that day, one of the Defendant Deputies came to Mr. Rios's cell and took him to the booking area, where the other Defendant Deputies were present. Mr. Rios was then instructed to take off the jail uniform and change into his own clothes. However, the rest of his belongings were not returned to him.

25. Based on the information he had received earlier, Mr. Rios understood that he would be released after changing his clothes.

26. However, as soon as Mr. Rios finished changing, one of the Defendant Deputies ordered him to turn around, and the Defendant Deputies shackled his wrists and ankles.

COMPLAINT – 5
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

27. Mr. Rios protested and asked what was going on and why he was being cuffed again if he was to be released. However, Defendant Deputies did not respond or provide any explanation.

28. Defendant Deputies took Mr. Rios by the forearm and escorted him out to a secure area where he was transferred to the custody of two GEO Corporation employees.

29. GEO Corporation is a private company that contracts with ICE to operate the Northwest Detention Center in Tacoma, Washington. The contract between ICE and GEO includes transportation of individuals to and from the Northwest Detention Center.

30. Mr. Rios was placed into the GEO vehicle despite his repeated protests that he was a U.S. citizen and that his U.S. passport was in the plastic bag containing his belongings.

31. Upon information and belief, Defendant Deputies had contacted ICE in advance of Mr. Rios's scheduled release, responding to the agency's notification request (Form I-247A) and sharing non-publicly available personal information. The Form I-247A received by Pierce County Jail has a handwritten note on it stating that Mr. Rios was "Ready for Pick Up."

32. Mr. Rios was detained for an additional period between the time he was informed his case would not proceed and the time he was transferred to ICE/GEO custody, further demonstrating that Defendant Deputies delayed his release until GEO employees arrived.

33. Defendant Deputies continued to hold Mr. Rios after the time he would have otherwise been released, for the sole purpose of allowing ICE or its agents to arrive and take custody of him.

34. Defendants had no probable cause or judicial warrant to re-detain Mr. Rios after he became entitled to release from county custody.

COMPLAINT – 6
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

35. Upon information and belief, Defendant Deputies' actions resulted from the Pierce County Sheriff's Department's custom of responding to notification requests from ICE and providing non-public information to federal immigration officials to facilitate an individual's arrest for immigration violations.

36. Upon information and belief, Defendant Deputies' actions also resulted from the Pierce County Sheriff's Department's custom of holding individuals who are otherwise entitled to release from county custody, for the sole purpose of transferring them to ICE custody, and without reasonable suspicion or probable cause of a crime.

37. A study by the University of Washington found that, from October 2016 through July 2018—prior to the enactment of the Keep Washington Working Act—Pierce County Jail received over 188 detainer requests from ICE. In at least 45 of those cases, the Pierce County Sheriff's Department prolonged the detention of the individuals who were the subjects of the ICE detainers. Moreover, even when "controll[ed] for other factors including race, number of charges, type, and seriousness of charge," individuals with immigration detainers were confined 273.5 percent longer than those without detainers. *See* Univ. of Wash., *Unequal Justice: Measuring the Impact of ICE Detainers on Jail Time in Pierce County* (Jan. 30, 2019), https://jsis.washington.edu/humanrights/2019/01/30/unequal-justice-ice-detainers-pierce-county/. The report concluded that such "disparity is not occurring by chance," and that "Pierce County processes individuals subjected to immigration detainers differently than those without." *Id.* These statistics and the specific circumstances of Mr. Rios's additional detention at Pierce County Jail demonstrate that Pierce County had a custom of holding individuals solely based on ICE detainers at the time of the relevant events in this case, despite the May 2019 enactment of the Keep Washington Working Act, which expressly prohibited such practices by statute.

COMPLAINT – 7
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

38. As a direct result of Defendants' actions, Mr. Rios—a U.S. citizen—was transferred to ICE custody and unlawfully detained at the Northwest ICE Processing Center (NWIPC) for a week.

39. Mr. Rios suffered significant physical pain and emotional damages due to his unlawful seizure by Defendants. Defendants' actions violated Mr. Rios's sense of safety and belonging in this country as a citizen. As a direct and immediate result of Defendants' actions, Mr. Rios was transported to the NWIPC where he was unlawfully held by ICE for one week.

40. In addition to depriving Mr. Rios of liberty and stripping him of all dignity, Defendants' unlawful actions caused Mr. Rios significant emotional distress. Defendant Deputies re-shackled and detained Mr. Rios solely for immigration purposes, violating federal and state laws prohibiting them from enforcing civil immigration laws, and disregarding indications that he was, in fact, a U.S. citizen. Defendant Deputies also communicated information to ICE regarding his release, in direct violation of Washington State law, which expressly prohibits responding to ICE notification requests and providing immigration enforcement authorities with "nonpublicly available personal information about an individual." RCW 10.93.160(4)(b)-(5).

41. Accordingly, Mr. Rios was left to wonder and despair about what would happen to him, and he experienced intense anger and frustration.

## CAUSE OF ACTION

### COUNT I
**Seizure Without Probable Cause – Fourth Amendment; 42 U.S.C. § 1983**

42. All of the foregoing allegations are re-alleged as though fully set forth herein.

43. Defendant Deputies seized Mr. Rios by preventing his release from Pierce County Jail, re-shackling his wrists and ankles, holding him by his arms, and placing him in a GEO transport vehicle.

COMPLAINT – 8
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

44. The law was clearly established prior to November 19, 2019, that no Deputy of the Pierce County Sheriff's Department, as local officers, had any lawful authority to seize or extend the seizure of any individual for civil immigration-related reasons.

45. The law was also clearly established prior to November 19, 2019, that for state and local law enforcement officers, a seizure without probable cause or at least reasonable suspicion of a crime constitutes an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution.

46. Mr. Rios was scheduled to be released from Pierce County Jail on November 19, 2019, after his pending criminal charges were resolved.

47. After Mr. Rios became entitled to release on his criminal charges, Defendant Deputies' seizure of Mr. Rios was not justified by probable cause or reasonable suspicion of any criminal activity.

48. Mr. Rios had the right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution.

49. Defendant Deputies' actions constituted a seizure of Mr. Rios's person.

50. Defendant Deputies' seizure of Mr. Rios was unreasonable.

51. Defendant Deputies' actions subjected Mr. Rios to a deprivation of his rights as secured by the Fourth Amendment.

52. Defendant Deputies' conduct resulted from Defendant Pierce County's custom of unlawfully arrogating authority to conduct civil immigration enforcement activities, including authorizing the seizure of individuals solely for immigration enforcement purposes.

53. Mr. Rios was injured by Defendants' unconstitutional seizure and Pierce County Sheriff's unconstitutional custom, which deprived him of his Fourth Amendment rights.

COMPLAINT – 9
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

54. Defendant Deputies' conduct of subjecting Mr. Rios to an unconstitutional seizure was motivated by evil motive or intent, or was recklessly or callously indifferent to his Fourth Amendment rights.

55. As a result of Defendants' unconstitutional seizure, Mr. Rios suffered harm, including but not limited to loss of liberty, significant humiliation, fear, trauma, stress, disruption, emotional distress, economic loss, and other damages.

56. As a result of Defendants' Fourth Amendment violations, Mr. Rios is entitled to damages.

## COUNT II
### State Tort – False Arrest

57. All of the foregoing allegations are re-alleged as though fully set forth herein.

58. Under Washington law, "[a]n arrest or imprisonment is false if it is unlawful." *Kellogg v. State*, 621 P.2d 133, 136 (Wash. 1980). Thus, a defendant's "unlawful violation of a person's right of personal liberty" or "restraint of that person without legal authority" constitutes the tort of false arrest. *Bender v. City of Seattle*, 664 P.2d 492, 499 (Wash. 1983).

59. Generally, in Washington, an arrest by a law enforcement officer is lawful only if (1) the arrest is made pursuant to a facially valid warrant supported by probable cause and issued by a neutral magistrate; (2) the arrest is for an offense committed in the officer's presence; or (3) the officer has reasonable grounds to believe that the arrestee committed a felony outside the officer's presence. *See, e.g.*, *Kilcup v. McManus*, 394 P.2d 375, 379 (Wash. 1964); *see also Kellogg*, 621 P.2d at 136.

60. Washington law specifically prohibits state and local law enforcement agencies and their officers from detaining individuals based solely on immigration detainer requests or civil immigration warrants issued by ICE. RCW 10.93.160(8); *see also* RCW 43.17.420(1), (5).

COMPLAINT – 10
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Such agencies and officers are also prohibited from providing non-public personal information to immigration officials in a noncriminal matter. RCW 10.93.160(5).

61. Moreover, federal law does not authorize state and local law enforcement agencies to engage in immigration enforcement activities unless they have entered into a written agreement with the Department of Homeland Security, and the state or local officers have been trained and certified, and are acting under the direction and supervision of federal authorities. 8 U.S.C. § 1357(g). Pierce County has not entered into a written agreement or gone through the training and certification process pursuant to § 1357(g). Furthermore, any agreements under § 1357(g) must be "consistent with State and local law." *Id.* § 1357(g)(1). Washington State law prevents law enforcement agencies from entering into such an agreement. RCW 10.93.160(11).

62. Defendant Deputies unlawfully restrained and interfered with Mr. Rios's liberty of movement by re-shackling him and continuing to hold him in custody solely for immigration purposes even after he became entitled to release.

63. Defendant Deputies' actions violated RCW 10.93.160, and were not supported by a judicial warrant, probable cause, or reasonable grounds for believing that Mr. Rios had committed a felony. Defendant Deputies thus committed the tort of false arrest.

64. Under Washington law, the doctrine of respondeat superior "imposes liability on an employer for the torts of an employee who is acting on the employer's behalf"—or, in other words, within "the scope of [their] employment." *Niece v. Elmview Grp. Home*, 929 P.2d 420, 425–26 (Wash. 1997). Under this doctrine, an employer's vicarious liability extends to any intentional tort committed by an employee as long as such conduct fell within the scope of their employment. *Robel v. Roundup Corp.*, 59 P.3d 611, 620 (Wash. 2002).

COMPLAINT – 11
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

65. In Washington, the doctrine of respondeat superior applies equally to local government entities as it does to other employers. RCW 4.96.010(1) states: "All local governmental entities . . . shall be liable for damages arising out of . . . the tortious conduct of their past or present officers, employees, or volunteers while performing or in good faith purporting to perform their official duties, to the same extent as if they were a private person or corporation."

66. Under the doctrine of respondeat superior, Defendant Pierce County is vicariously liable for Defendant Deputies' false arrest of Mr. Rios, as they committed the tortious conduct within the scope of their employment as deputies of the Pierce County Sheriff. Defendant Deputies arrested Mr. Rios at the place of their employment (i.e., Pierce County Jail) during their work hours. *See, e.g.*, *Robel*, 59 P.3d at 621 (holding the employer vicariously liable where the employees engaged in tortious conduct "on company property during working hours").

67. Nor were Defendant Deputies pursuing any "personal objective[s]" in arresting Mr. Rios. *Niece*, 929 P.2d at 426. Rather, they arrested him "while performing or in good faith purporting to perform their official duties." RCW 4.96.010(1). In fact, upon information and belief, Defendant Deputies' tortious acts were authorized by Pierce County's custom.

68. As a result of Defendants' tortious conduct, Mr. Rios suffered harm, including but not limited to loss of liberty, significant humiliation, fear, trauma, stress, disruption, emotional distress, economic loss, and other damages.

69. Defendants are liable for these acts and omissions under Washington State law.

## COUNT III
**State Civil Rights Tort – Washington Law Against Discrimination**

70. All of the foregoing allegations are re-alleged as though fully set forth herein.

COMPLAINT – 12
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

71. The Washington Law Against Discrimination ("WLAD") prohibits discrimination based on race, color, or national origin. RCW 49.60 *et seq.*

72. The right to be free from discrimination includes "[t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement." RCW 49.60.030(1)(b). Such places include "any place . . . for public conveyance or transportation on land, water, or in the air, including the stations and terminals thereof . . . or where the public gathers, congregates, or assembles . . . for public purposes." RCW 49.60.040(2). "Full enjoyment" of the place includes being admitted to the place "without acts directly or indirectly causing persons . . . to be treated as not welcome, accepted, desired, or solicited." RCW 49.60.040(14).

73. WLAD provides a private cause of action to recover money damages for individuals who have been injured by a violation of their right to be free from discrimination. RCW 49.60.030(2).

74. Defendant Deputies violated Mr. Rios's right to be free from discrimination by arresting and detaining him based on his race, color, national origin, or perceived citizenship or immigration status. Upon information and belief, Defendants took such actions for no reason other than that Mr. Rios was a Hispanic man wanted by ICE. Thus, Defendant Deputies unlawfully discriminated against Mr. Rios when they prevented him from accessing the public accommodations inside and outside the jail, including access to the front door, lobby and the sidewalk and street, even though he was entitled to release from Pierce County custody. Their actions directly caused him to feel "not welcome, accepted, desired, or solicited." RCW 49.60.040(14).

COMPLAINT – 13
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

75. Under the doctrine of respondeat superior, Defendant Pierce County is vicariously liable for Defendant Deputies' unlawful discrimination against Mr. Rios, as their tortious conduct occurred within the scope of their employment. Defendant Deputies committed the tort at the place of their employment during their work hours, "while performing or in good faith purporting to perform their official duties." RCW 4.96.010(1). Moreover, upon information and belief, such conduct was authorized by Pierce County's custom.

76. As a result of Defendants' tortious acts, Mr. Rios suffered harm, including but not limited to loss of liberty, significant humiliation, fear, trauma, stress, disruption, emotional distress, economic loss, and other damages.

77. Defendants are liable for these acts and omissions under WLAD.

## COUNT IV
### Declaratory Relief – Washington Uniform Declaratory Judgment Act

78. All of the foregoing allegations are re-alleged as though fully set forth herein.

79. Washington's Uniform Declaratory Judgment Act (UDJA) authorizes courts to "declare rights, status, and other legal relations." RCW 7.24.010.

80. Under UDJA, "[a] person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute" and "obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020.

81. The Washington statute regarding "Immigration and citizenship status—Law enforcement agency restrictions," RCW 10.93.160, was enacted as part of the Keep Washington Working Act, effective May 21, 2019. 2019 Wash. Sess. Laws 3951–53.

82. This statute prohibits state and local law enforcement agencies and their officers from providing "information pursuant to notification requests from federal immigration

Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

authorities for the purposes of civil immigration enforcement." RCW 10.93.160(4)(b). A "notification request" is defined by statute as a request from federal immigration authorities that "a state or local law enforcement agency inform [them] of the release date and time in advance of the release of an individual in its custody." RCW 43.17.420(11). The statute further specifies that such a request includes, but is not limited to, Form I-247A. *Id.*

83. The Washington statute specifically prohibits state and local law enforcement agencies and their officers from detaining or holding an individual "solely for the purposes of determining immigration status or based solely on a civil immigration warrant, or an immigration hold request." RCW 10.93.160(8); *see also* RCW 43.17.420(1), (5).

84. The Washington statute also prohibits providing federal immigration officials with "nonpublicly available personal information about an individual." RCW 10.93.160(5). Personal information includes names, date of birth, location, and other biometric data. *See* Wash. State Off. of the Att'y Gen., Keep Washington Working Act Guidance, Model Policies, and Training Recommendations for State and Local Law Enforcement Agencies (2020), https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/Home/Office_Initiatives/KWW/KWW%20LEA%20Model%20Guidance.pdf.

85. Mr. Rios is a person whose rights are affected by the statutory provisions under RCW 10.93.160.

86. Defendant Deputies violated RCW 10.93.160(4)(b) by notifying ICE of Mr. Rios's planned release time.

87. Defendant Deputies also violated RCW 10.93.160(5) by providing ICE with non-public information regarding Mr. Rios, including his name and location, and any other personal information they communicated about him to ICE.

COMPLAINT – 15
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

88. Defendant Deputies violated RCW 10.93.160(8) when they detained Mr. Rios after he became entitled to release from county custody based solely on an immigration hold request from ICE.

89. Defendant Pierce County's custom of responding to notification requests from ICE, providing immigration officials with non-public information, and holding individuals solely for immigration-related arrests is in direct violation of RCW 10.93.160(4)(b), (5), (8).

90. Mr. Rios seeks a judgment declaring that Defendants violated RCW 10.93.160.

## PRAYER FOR RELIEF

As a direct and proximate result of Defendants' acts, omissions, and other conduct, Mr. Rios suffered and continues to suffer harm, including but not limited to pain and suffering, mental and emotional distress, loss of wages, loss of enjoyment of life, loss of liberty, humiliation, fear, despair, and other specific and general damages in amounts to be proven at the time of trial. WHEREFORE, Plaintiff respectfully requests relief as follows:

a. Trial by jury on all claims so triable;

b. Special and general damages from Defendants in an amount to be proven at trial;

c. Punitive damages from Defendants;

d. A declaration that Defendants violated Mr. Rios's rights under the Washington Law Against Discrimination and RCW 10.93.160;

e. Attorneys' fees and costs of litigation pursuant to the provisions of 42 U.S.C. § 1988 and the Washington Law Against Discrimination;

f. Pre-judgment and post-judgment interest on any award of damages; and

g. Such other relief as the Court deems just and equitable.

Respectfully submitted this 12th day of January, 2022.

COMPLAINT – 16
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

s/ Matt Adams
Matt Adams, WSBA No. 28287

s/ Leila Kang
Leila Kang, WSBA No. 48048

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974

s/ Margot Adams
Margot Adams, WSBA No. 56573

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org
leila@nwirp.org
aaron@nwirp.org
margot@nwirp.org

s/ Yvonne Chin
Yvonne Chin, WSBA No. 50389
Antoinette M. Davis, WSBA No. 29821
ACLU of WASHINGTON FOUNDATION
PO Box 2728
Seattle, WA 98111
(206) 624-2184

s/ Hardeep Rekhi
Hardeep Rekhi, WSBA No. 34579
Gregory Wolk, WSBA No. 28946
REKHI & WOLK, P.S.
529 Warren Ave N Ste 201
Seattle, WA 98109
(206) 388-5887

COMPLAINT – 17
Case No. 3:22-cv-5021

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611